**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiff, Lorraine Harmer*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| LORRAINE HARMER, | : **Civil Action No. 2:18-05433** |
| | : |
| Plaintiff, | : **AMENDED COMPLAINT FOR** |
| | : **DECLARATORY JUDGMENT,** |
| v. | : **INJUNCTIVE RELIEF** *and* |
| | : **DAMAGES** |
| CHESTER COUNTY INTERMEDIATE UNIT, | : |
| PENNSYLVANIA STATE EDUCATION ASSOCIATION, | : **JURY TRIAL DEMANDED** |
| CHIP HARPER, | : |
| DR. JOSEPH O'BRIEN, | : |
| MAUREEN LINAHAN, | : |
| MARY CURLEY *and* | : |
| IAIN STRACHAN, | : |
| | : |
| Defendants. | : |

_____

## NATURE OF THE ACTION

1. This is an action for relief from violations of Title VII of the Civil Rights Act of 1964, 42

   U.S.C. §§ 2000e et seq. ("Title VII"); the Americans with Disabilities Act of 1990, 42

   U.S.C. §§ 12112-12117 ("ADA"); the Family and Medical Leave Act of 1993, 29 U.S.C.

   §§ 2601 et seq. ("FMLA"); Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. §

   1983 ("Section 1983"); the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963

   ("PHRA"); and the Pennsylvania Whistleblower Law, 43 Pa.C.S. §§ 1421-1428

   ("PWL").

2. Plaintiff Lorraine Harmer seeks declaratory and injunctive relief, actual damages, compensatory damages, punitive damages, reinstatement, attorneys' fees, litigation costs, and pre- and post-judgment interest as remedies for Defendants' violations of her rights.

## **PARTIES**

3. Plaintiff Lorraine Harmer ("Ms. Harmer") is an adult individual resident and citizen of the Commonwealth of Pennsylvania.

4. Defendant Chester County Intermediate Unit ("CCIU") is a is a governmental entity providing educational services in Chester County, Pennsylvania; with a principal place of business located at 455 Boot Road, Downingtown, Pennsylvania, 19335.

5. Defendant Pennsylvania State Education Association ("PSEA") is a labor organization with a principal place of business located at 1512 McDaniel Drive West Chester, Pennsylvania 19380.

6. Defendant Chip Harper ("Mr. Harper") is CCIU's Supervisor of Online Learning and maintains a principal place of business located at 455 Boot Road, Downingtown, Pennsylvania, 19335.

7. Defendant Dr. Joseph O'Brien ("Dr. O'Brien") was CCIU's Executive Director and maintains a principal place of business located at 455 Boot Road, Downingtown, Pennsylvania, 19335.

8. Defendant Maureen Linahan ("Ms. Linahan") is CCIU's Assistant Director of Human Resources and maintains a principal place of business located at 455 Boot Road, Downingtown, Pennsylvania, 19335.

9.  Defendant Mary Curley ("Ms. Curley") is CCIU's Director of Communications and Online Learning Solutions and maintains a principal place of business located at 455 Boot Road, Downingtown, Pennsylvania, 19335.

10. Defendant Iain Strachan ("Mr. Strachan") is CCIU's Assistant Director of Human Resources and maintains a principal place of business located at 455 Boot Road, Downingtown, Pennsylvania, 19335.

11. At all relevant times, Defendants acted or failed to act through their agents, servants and employees, each of whom were acting within the course and scope of their employment.

12. Defendants were an "employers" and Ms. Harmer was an "employee" within the meaning of the applicable law.

13. Defendants systematically and willfully violate workers' rights.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. Plaintiff timely filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging violations of Title VII, the ADA and the PHRA.

15. EEOC issued Plaintiff Notices of Right to Sue Within 90 days and more than one year has elapsed since PHRC assumed jurisdiction over her charges.

16. Plaintiff timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions of federal law under Title VII, the ADA, the FMLA and Section 1983.

18. This Court has supplemental jurisdiction over Plaintiff's PHRA and PWL claims pursuant to 28 U.S.C. § 1367 because they arise out of the same nucleus of operative facts as Plaintiff's Title VII, ADA, FMLA and Section 1983 claims.

19. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) and because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this district and Defendants are subject to personal jurisdiction here.

20. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## **FACTS**

21. Ms. Harmer started her employment with CCIU in January 2014 as a long-term substitute teacher.

22. Ms. Harmer has been a member of PSEA since January 2014.

23. Ms. Harmer was hired as a permanent virtual math teacher at CCIU's Brandywine Virtual Academy in August 2014.

24. At all relevant times, Ms. Harmer was supervised by Defendant Harper and indirectly supervised by Defendants Curley and O'Brien.

25. Throughout the course of Ms. Harmer's employment, she suffered from qualifying health conditions under the ADA, including but not limited to fibromyalgia, L5 radiculopathy, anxiety and PTSD.

26. Ms. Harmer's direct supervisor, Defendant Harper, became aware of her health conditions and they put accommodations in place, including, but not limited to, being able to take a break during meetings with him (since interacting with males—especially males in authority roles) exacerbates Ms. Harmer's symptoms of PTSD and anxiety.

27. This informal accommodation was in place for several years without issue.

28. However, in around December 2017, Ms. Harmer expressed concerns to Defendant Harper about illegalities she believed were taking place at CCIU and she refused to continue to participate in such illegalities. For example, Plaintiff raised concerns about including violations of attendance and truancy law—CCIU was allowing students to promote from grade to grade without merit and without doing any coursework.

29. Plaintiff further expressed that pre-mature advancement of students by their partnering districts/LEAs and said LEA's failure to enforce truancy laws or other PA codes/regulations regarding academic standards could negatively impact students' performance on state assessments (which in turn directly impacts teacher evaluation scores) and was in essence denying students adequate education.

30. Plaintiff continued to raise these aforesaid concerns to Defendant Harper throughout December of 2017 ; however, Defendant Harper would simply respond by telling Plaintiff that her concerns are pervasive across the cyber education industry but that there was nothing she could do in her role as a teacher.

31. Not satisfied with Defendant Harper's response, Plaintiff raised her concerns to Lisa Miller (Mathematics Teacher and Department Chair within Defendant CCIU), CCIU-EA, and PSEA (her local union).

32. As a result, of her complaint and refusal to engage in such illegal conduct, Ms. Harmer was subjected to severe animosity and hostility.

33. For example, during a meeting with Defendant Harper in December 2017, Defendant Harper became extremely agitated and aggressive toward Ms. Harmer, causing her health conditions to flare up.

34. Ms. Harmer told Defendant Harper that she felt uncomfortable with the conversation, especially being alone in the same room. She stated she no longer wished to participate in the conversation.

35. Despite this, Defendant Harper continued to verbally attack her.

36. Defendant Harper's attack and the resulting stress on Ms. Harmer (as well as other retaliatory actions) aggravated her health conditions, which amplified after subsequent incidents with CCIU's management.

37. Additionally, on December 14, 2017, CCIU informed Ms. Harmer her schedule and work location were being changed from working in Downingtown four days per week to working in Downingtown two days per week and working in Philadelphia two days per week. Ms. Harmer was the only staff member asked to change her work location and schedule. This arrangement exacerbated her health conditions—in fact, anytime she went to CCIU's Philadelphia location she needed a support person.

38. Ms. Harmer expressed her concerns about how this location change affected her health with PSEA, but it ignored her concerns and failed to address the issue with CCIU.

39. On December 17, 2017, Ms. Harmer wrote a letter to Defendant Curley outlining her health conditions and her prior history of assault. She described the signs and symptoms of her health conditions. She disclosed her previous accommodation with Defendant Harper and requested reasonable accommodations due to the above-mentioned meeting with Defendant Harper.

40. After Plaintiff sent the above letter, she had a meeting with CCIU management and human resources, including Defendants Harper, Curley, and Linahan, and David

Tschachler (a union representative) to discuss her accommodation requests (including taking a break from meetings and having a support person present during meetings).

41. Around the same time, Plaintiff also raised concerns of gender discrimination to Defendant Linahan. Plaintiff stated she believed Defendant Harper treated women in the same aggressive manner that he had treated her and stated her concern that his irrational and negative behavior was based upon a discriminatory animus toward women. Ms. Harmer also reported to Defendant Linahan that she believed she was being harassed by Defendant Harper.

42. After Ms. Harmer's meetings with CCIU's management and human resources in December 2017 (not all of which are discussed herein), Ms. Harmer was asked to provide ADA accommodation paperwork regarding her health conditions and the accommodations needed to continue working in her role.

43. Around January 2017, the harassment worsened when CCIU management and human resources, including Defendant Linahan, made false statements about Ms. Harmer to make Plaintiff appear unable to perform her job, including calling Plaintiff "emotionally fragile" and asking Plaintiff if her "doctor cleared her to return to work" (even though Plaintiff was not on medical leave).

44. Ms. Harmer then complained again to Defendants Linahan and Curley based on the above harassment and informed them she had reach out to EEOC to file a charge of discrimination.

45. Around January 10, 2018, Plaintiff submitted ADA accommodation paperwork requesting accommodations for fibromyalgia (including getting an ergonomic

workstation, flexible work schedule, leave time to attend therapy sessions and doctor visits, the ability to work from home, and reduction in work stress).

46. CCIU's management was made aware during this time that Plaintiff was in the process of getting her doctor to complete her ADA paperwork.

47. From January 10, 2018 through January 24, 2018, Ms. Harmer was forced to use her remaining sick and comp time to treat her health conditions since the above reasonable accommodation requests were denied. During this time period, Plaintiff requested the ability to work from home and leave time to attend therapy sessions but her requests were denied.

48. CCIU's human resources department, including Defendants Linahan and Strachan, were aware Plaintiff was using sick and comp time as a result of her health conditions and their failure to accommodate her.

49. Additionally, Plaintiff's request to work from home was denied despite other individuals outside her protected classes being provided with the same accommodation.

50. On January 19, 2018, Defendants misinformed Plaintiff about her FMLA rights and therefore Plaintiff did not apply for FMLA.

51. Plaintiff sent another ADA request for accommodations from her doctor on January 22, 2018 requesting the ability to work from home for 2 months due to anxiety disorder.

52. Plaintiff never received a response from CCIU regarding this request even though PSEA told Plaintiff the request was presented to CCIU.

53. PSEA told Plaintiff she could either take FMLA, resign or be terminated, and that if she was terminated she would lose her teaching license. PSEA also told Plaintiff if she took FMLA, she would not be able to student teach or apply for unemployment.

54. Therefore, due to CCIU's failure to accommodate Plaintiff's health conditions and the hostile work environment described above, Ms. Harmer felt her only option was to resign. Immediately thereafter, before her resignation was provided to her employer, Ms. Harmer applied for FMLA. Ms. Harmer informed PSEA that she in fact did not want to resign and wanted to apply for FMLA.

55. Afterward, CCIU's management, including Defendants O'Brien, Harper, Strachan, Curley and Linahan, recommended Plaintiff be terminated for, among other things, abuse of sick time and failure to apply for FMLA.

56. In addition to being terminated from her employment with CCIU, Ms. Harmer was also denied other teaching opportunities as a result of Defendants' conduct, including STEM Saturday Opportunities, STEM Integrative Endorsement position, the ability to teach PBL courses, and student teaching opportunities.

57. Plaintiff was terminated from employment and denied other job opportunities because of her disabilities/perceived disabilities, and in retaliation for requesting accommodations, complaining about sex and disability discrimination, and opposing unlawful conduct. Defendants subjected Ms. Harmer to a hostile work environment.

58. Ms. Harmer's termination was upheld by CCIU at a Loudermill Hearing on March 5, 2017.

59. PSEA's discriminatory and retaliatory actions placed a role in the circumstances leading to her termination because PSEA exercised control over her employment decisions and communications with CCIU.

60. PSEA failed to fairly represent Plaintiff because of her disabilities, accommodation requests, and complaints of discrimination and colluded with CCIU to terminate her employment.

61. Toward the end of her employment, PSEA representatives, including Mark Cottom, David Tschachler, Brian Horvat, and Shannon Moore were made aware of Plaintiff's health conditions. From December 2017, Ms. Harmer asked PSEA to file grievances regarding Defendants' discrimination, harassment and retaliation, however PSEA ignored her requests.

62. The above are just some examples of the unlawful discrimination, harassment and retaliation that Ms. Harmer suffered at the hands of Defendants.

63. At the time of her termination, Ms. Harmer was qualified for the position and was performing well.

64. Defendants discriminated against Ms. Harmer in the terms and conditions of their employment because of her protected characteristics.

65. Defendants retaliated against Ms. Harmer because she reported or otherwise opposed Defendants' illegal conduct.

66. Defendants subjected Ms. Harmer to harassment and a hostile work environment based on her protected characteristics.

67. Ms. Harmer claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

68. Ms. Harmer claims unlawful constructive and/or unlawful actual discharge.

69. As a direct result of Defendants' unlawful discrimination and retaliation, Ms. Harmer has suffered ongoing emotional and mental distress. Ms. Harmer further claims aggravation, activation and/or exacerbation of any preexisting condition.

**CAUSES OF ACTION**

**COUNT I**
**TITLE VII DISPARATE TREATMENT**
**42 U.S.C. § 2000e-2**
**Plaintiff v. Defendants CCIU and PSEA**

70. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

71. Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

72. Title VII further provides that "un unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

73. Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions, training and privileges of employment because of her sex.

74. Defendants subjected Plaintiff to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing changes in significant changes in her employment benefits.

75. Plaintiff's protected characteristics played a determinative factor in Defendants' decisions.

76. Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

77. Alternatively, Plaintiff' protected status played a motivating part in Defendants' decisions even if other factors may also have motivated its actions against Plaintiff.

78. Defendants acted with the intent to discriminate.

79. Defendants acted upon a continuing course of conduct.

80. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

<u>**COUNT II**</u>
**TITLE VII HOSTILE WORK ENVIRONMENT**
**42 U.S.C. § 2000e-2**
<u>**Plaintiff v. Defendants CCIU and PSEA**</u>

81. Plaintiff incorporates by reference each and every allegation made in the above

   paragraphs of this complaint.

82. Title VII also prohibits hostile work environment harassment, defined as unwanted

   comments or conduct regarding the Plaintiff's protected characteristics that have the

   purpose or effect of unreasonably interfering with the terms and conditions of the

   Plaintiff's employment. <u>Harris v. Forklift Systems</u>, 510 U.S. 17, 21 (1993).

83. An employer is strictly liable for supervisor harassment that "culminates in a tangible

   employment action, such as discharge, demotion, or undesirable reassignment."

   <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998).

84. Respondeat superior liability for the acts of non-supervisory employees exists where "the

   defendant knew or should have known of the harassment and failed to take prompt

   remedial action. <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1486 (3d Cir. 1990).

85. Employer liability for co-worker harassment also exists where "the employer failed to

   provide a reasonable avenue for complaint." <u>Huston v. Procter & Gamble Paper Prods.</u>

   <u>Corp.</u>, 568 F.3d 100, 105 (3d Cir. 2009).

86. The Third Circuit has held that the retaliation provision of Title VII "can be offended by

   harassment that is severe or pervasive enough to create a hostile work environment."

   <u>Jensen v. Potter</u>, 435 F.3d 444, 446 (3d Cir. 2006).

87. Here, Defendants' conduct occurred because of Plaintiff's legally protected

   characteristics and was severe or pervasive enough to make a reasonable person of the

same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

88. The harassing conduct directly refers to Plaintiff's protected traits.

89. Defendants delegated to Plaintiff's supervisors the authority to control the work environment and they abused that authority to create a hostile work environment.

90. Harassing conduct filled the environment of Plaintiff's work area.

91. Defendants knew that the harassing conduct filled Plaintiff's work environment.

92. Harassing conduct occurred daily.

93. Harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness and serious psychological sequelae.

94. Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

95. The conduct was both severe and pervasive.

96. The conduct was physically threatening and humiliating.

97. The conduct unreasonably interfered with Plaintiff's work performance.

98. The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

99. Defendants provided a futile avenue for complaint.

100. Defendants retaliated against Plaintiff for her complaints.

101. Defendants acted upon a continuing course of conduct.

102. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following

relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an

award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an

award of pre- and post-judgment interest and court costs as further allowed by law; (4) an

adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title

VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

### COUNT III
### TITLE VII RETALIATION
### 42 U.S.C. § 2000e-3
### Plaintiff v. Defendants CCIU and PSEA

103.    Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

104.    Title VII protects employees from retaliation for attempting to exercise their

rights under the Act:

> 42 U.S.C. § 2000e-3. Other unlawful employment practices
>
> (a) Discrimination for making charges, testifying, assisting, or
> participating in enforcement proceedings. It shall be an unlawful
> employment practice for an employer to discriminate against any of
> his employees . . . because [she] has opposed any practice made an
> unlawful employment practice by this subchapter, or because [she]
> has made a charge, testified, assisted, or participated in any manner
> in an investigation, proceeding, or hearing under this subchapter.

105.    The Supreme Court in <u>Burlington v. N. & S.F. Ry. V. White</u>, 548 U.S. 53, 68

(2006) held that a cause of action for retaliation under Title VII lies whenever the

employer responds to protected activity in such a way that "might have dissuaded a

reasonable worker from making or supporting a charge of discrimination."

106.     Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

107.     "[A] Plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[she] was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995).

108.     An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class.")

109.     Here, Defendants discriminated against Plaintiff because of her protected activity under Title VII.

110.     Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex was violated.

111.     Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

112.     There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity.

113.    Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

114.    Defendants acted upon a continuing course of conduct.

115.    Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against her, such as the unusually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

116.    As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT IV
### ADA DISABILITY DISCRIMINATION
### 42 U.S.C. §§ 12101 et seq.
### Plaintiff v. Defendants CCIU and PSEA

117.    Plaintiff repeats and realleges every allegation made in the above paragraphs of this complaint.

118.     Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

119.     Under the <u>McDonnell Douglas</u> burden-shifting analysis, Plaintiff must establish a *prima facie* case for discrimination, namely that she (1) has a disability, (2) is a qualified individual, and (3) has suffered and adverse employment action (4) under circumstances giving rise to an inference of discrimination. <u>Turner v. Hershey Chocolate USA</u>, 440 F.3d 604, 611 (3d Cir. 2006).

120.     Furthermore, it is well-settled law that, under the ADA, employers have an obligation to provide a reasonable accommodation for a disabled employee and that the failure to provide a reasonable accommodation to an employee's known disability is a form of discrimination. 42 U.S.C. § 12112(b)(5)(A).

121.     It is undisputed that (1) Plaintiff's aforementioned diagnoses qualify as disabilities; (2) Plaintiff's experience and performance establish she was qualified; and (3) Plaintiff was terminated (4) a short time after requesting a reasonable accommodation related to the above-mentioned diagnoses.

122.     Defendants cannot show a legitimate nondiscriminatory reason for their actions and any reasons proffered by Defendants for terminating Plaintiff's employment are pretextual and can readily be disbelieved.

123.     Defendants engaged in an unlawful discriminatory practice by discriminating and

retaliating against Plaintiff because of her disability and refusing to provide Plaintiff with

a reasonable accommodation.

124.     Because of Defendants' violation of the ADA, Plaintiff has suffered damages,

including, but not limited to: past and future lost wages, mental pain and suffering;

humiliation; emotional distress; diminishment of career opportunity; harm to his business

reputation; loss of self-esteem; disruption to his family life; and other harm, pain and

suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory

damages, including past and future damages for pay, bonuses, personal days, overtime,

benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees;

expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

<u>**COUNT V**</u>
**FMLA INTERFERENCE**
**29 U.S.C. § 2615(a)(1)**
<u>**Plaintiff v. Defendants CCIU and PSEA**</u>

125.     Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

126.     The FMLA provides eligible employees of covered employers with up to 12

workweeks of unpaid, job protected leave in a 12-month period for, specified health and

caregiving reasons, including a serious health condition that makes the employee unable

to perform the essential functions of her job, as well as pregnancy and caring for a new

child. 29 U.S.C. §§ 2601 et seq.

127.    A covered employer must provide FMLA benefits and protections to eligible

employees and comply with their responsibilities under the FMLA and its regulations at

29 C.F.R. part 825.

128.    At all relevant times, Plaintiff was an eligible employee of a covered employer

with a qualifying medical condition and/or caregiving reason entitling her to the

protections of the FMLA.

129.    Defendants violated the FMLA by interfering with, restraining and/or denying

Plaintiff's rights under the FMLA by, *inter alia*:

    a.  Failing to comply with the general notice requirements under the FMLA;

    b.  Failing to comply with the eligibility notice requirements under the FMLA;

    c.  Failing to comply with the rights and responsibilities notice requirements under the FMLA;

    d.  Failing to comply with the designation notice requirements under the FMLA;

    e.  Failing to provide notice of a fitness-for-duty certification with the designation notice as required by the FMLA;

    f.  Failing to continue to contribute to Plaintiff's health benefits while she was placed on involuntary medical leave;

    g.  Discharging and/or constructively discharging, suspending and/or disciplining Plaintiff notwithstanding that Plaintiff was fit to perform their duties and return to work at the end of her FMLA leave;

    h.  Retaliating against Plaintiff for asking for attempting to exercise her rights under the FMLA;

    i.  Failing to provide Plaintiff with the proper FMLA forms and/or medical certifications;

    j.  Failing to supervise and/or train its employees and supervisors on compliance with the provisions of the FMLA;

    k.  Failing to have in place proper FMLA policies, procedures and compliance; and/or

l. Otherwise violating the FMLA.

130. Defendants' violations of the FMLA were grossly negligent and/or willful.

131. As a direct and proximate cause of Defendants' willful violations of the FMLA, Defendants are liable for Plaintiff's compensation and benefits lost by reason of the above violations, for other actual monetary losses sustained as a direct result of the Defendants' violations, and for appropriate equitable or other relief tailored to the harm suffered by Plaintiff. <u>See</u> 29 CFR 825.300 (e).

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with the FMLA; (2) an award of reasonable attorneys' fees and costs of this action in accordance with the FMLA; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an award of liquidated damages in accordance with the FMLA; (5) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of the FMLA; and (6) all additional general and equitable relief to which Plaintiff is entitled.

<u>**COUNT VI**</u>
**FMLA RETALIATION**
**29 U.S.C. § 2615(a)(2)**
<u>**Plaintiff v. Defendants CCIU and PSEA**</u>

132. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

133. The FMLA protects employees from retaliation.

134. Defendants violated the FMLA by retaliating and discriminating against Plaintiff for exercising her rights under the FMLA by, *inter alia*:

    a. Failing to continue to contribute to Plaintiff's health benefits while she was placed on involuntary medical leave;

b. Discharging and/or constructively discharging, suspending and/or disciplining Plaintiff notwithstanding that Plaintiff was fit to perform her duties and return to work at the end of her FMLA leave;

c. Retaliating against Plaintiff for attempting to exercise her rights under the FMLA;

d. Failing to supervise and/or train its employees and supervisors on compliance with the provisions of the FMLA;

e. Failing to have in place proper FMLA policies, procedures and compliance; and,

f. Otherwise violating the FMLA.

135.    Defendants' violations of the FMLA were grossly negligent and/or willful.

136.    As a direct and proximate cause of Defendants' willful violations of the FMLA, Defendants are liable for Plaintiff's compensation and benefits lost by reason of the violations, for other actual monetary losses sustained as a direct result of their violation, and for appropriate equitable or other relief tailored to the harm suffered by Plaintiff. See 29 CFR 825.300 (e).

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with the FMLA; (2) an award of reasonable attorneys' fees and costs of this action in accordance with the FMLA; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an award of liquidated damages in accordance with the FMLA; (5) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of the FMLA; and (6) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT VII
## DISPARATE TREATMENT IN VIOLATION OF EQUAL PROTECTION CLAUSE
## 42 U.S.C. § 1983
## Plaintiff v. All Defendants

137.     Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

138.     The Fourteenth Amendment to the United States Constitution protects persons

from being subjected to discrimination, by persons acting under color of state law, on the

basis of a protected class (e.g., sex). U.S. Const. amend. XIV.

139.     Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

140.     Section 1983 provides a cause of action for unconstitutional employment

discrimination by both employers and individuals, so long as the Plaintiff shows that the

defendant acted under color of state law. See Fitzgerald v. Barnstable School Committee,

129 S. Ct. 788, 796 (2009) ("The Equal Protection Clause reaches only state actors, but §

1983 equal protection claims may be brought against individuals as well as municipalities

and certain other state entities."); see also Andrews v. City of Philadelphia, 895 F.2d

1469, 1478 (3d Cir. 1990) ("Liciardello and Doyle objectively should have known the

applicable legal standard, and thus are not protected by qualified immunity in treating, or allowing their subordinates to treat, female employees differently on the basis of gender in their work environment.").

141.     Defendants violated Section 1983 by intentionally discriminating against Plaintiff in a serious tangible way with respect to her compensation, terms, conditions or privileges of employment.

142.     Plaintiff's protected characteristics (sex and protected activity) were a determinative or motivating factor in Defendants' employment actions.

143.     Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

144.     Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated Defendants' actions against Plaintiff.

145.     Defendants acted under color of state law.

146.     Defendants acted with the intent to discriminate.

147.     Defendants acted upon a continuing course of conduct.

148.     Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendants.

149.     As a result of Defendants' violations of Plaintiff's Equal Protection rights, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation,

emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against all Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1983; (3) reasonable attorneys' fees in accordance with Section 1983; (4) litigation costs in accordance with Section 1983; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section 1983; (7) punitive damages in accordance with Section 1983; (8) front pay in accordance with Section 1983; and (9) all additional general and equitable relief to which Plaintiff is entitled.

<u>**COUNT VIII**</u>
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF EQUAL PROTECTION CLAUSE**
**42 U.S.C. § 1983**
<u>**Plaintiff v. All Defendants**</u>

150.     Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

151.     The Third Circuit has made it clear that a hostile work environment based on sex can give rise to an equal protection claim. <u>See</u>, <u>e.g.</u>, <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1478-79 (3d Cir. 1990) (upholding verdict for Plaintiff on sexual harassment claims against city employees, based on conclusion that evidence supported finding of purposeful discrimination); <u>see also</u> <u>Bohen v. City of East Chicago, Ind.</u>, 799 F.2d 1180, 1185 (7th Cir. 1986); Cheryl L. Anderson, <u>"Nothing Personal:" Individual Liability under</u> <u>42 U.S.C. § 1983 for Sexual Harassment as an Equal Protection Claim</u>, 19 BERKELEY J. EMP. & LAB. L. 60, 80 (1998) (citing <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57 (1986) as support for argument that sex harassment can satisfy the intentional discrimination requirement for equal protection claims).

152.    The Third Circuit has also made clear that a hostile work environment equal protection claim can be made even if the defendant is not the Plaintiff's supervisor. <u>See Bonenberger v. Plymouth Twp.</u>, 132 F.3d 20, 24 (3d Cir. 1997).

153.    Additionally, a Plaintiff can show an equal protection violation by a supervisor who fails properly to address harassment by the Plaintiff's co-workers. <u>Andrews</u>, 895 F.2d at 1479.

154.    Defendants violated Section 1983 by subjecting Plaintiff to hostile work environment harassment based on sex.

155.    Defendants' conduct was not welcomed by Plaintiff.

156.    Defendants' conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile or abusive.

157.    Plaintiff believed her work environment was hostile or abusive as a result of Defendants' conduct.

158.    As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

159.    Defendants failed to exercise reasonable care to prevent hostile work environment harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of sex, failing to fully communicate the policy to their employees, failing to provide a reasonable way for Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

160.    Defendants acted under color of state law.

161.    Defendants acted with the intent to discriminate.

162.    Defendants acted upon a continuing course of conduct.

163.    Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendants.

164.    As a result of Defendants' violations of Plaintiff's Equal Protection rights, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against all Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1983; (3) reasonable attorneys' fees in accordance with Section 1983; (4) litigation costs in accordance with Section 1983; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section 1983; (7) punitive damages in accordance with Section 1983; (8) front pay in accordance with Section 1983; and (9) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT IX
### RETALIATION IN VIOLATION OF PETITION CLAUSE
### 42 U.S.C. § 1983
### Plaintiff v. All Defendants

165.    Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

166.    The First Amendment gives persons the right to petition the Government for a redress of grievances. U.S. Const. amend. I.

167.    "[R]etaliation by a government employer for a public employee's exercise of the right of access to the courts may implicate the protections of the Petition Clause." Borough of Duryea v. Guarnieri, 131 S. Ct. 2488, 2494 (2011); see also Mack v. Warden Loretto FCI, 839 F.3d 286 (3d Cir. 2016) (holding that an inmate's oral grievance is protected under the Petition Clause).

168.    To be protected under the First Amendment, speech by a government employee "must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Waters v. Churchill, 511 U.S. 661, 668 (1994).

169.    At all relevant times, Defendants received (and still receive) federal and/or state funding and/or subsidies.

170.    To be protected under the First Amendment, speech by a government employee "must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Waters v. Churchill, 511 U.S. 661, 668 (1994).

171.    Here, Plaintiff engaged in activity that was protected by the First Amendment's Petition Clause.

172.     While working for Defendants, Plaintiff reported (verbally and in writing) what she reasonably believed to be violations of various regulations under state and federal law, codes, and/or regulations.

173.     Defendants' management never properly investigated or resolved Plaintiff's concerns and instead retaliated against Plaintiff for raising said complaints.

174.     Following Plaintiff's complaints regarding what she reasonably believed to be violations of state law, codes and/or regulations, Plaintiff's work environment became increasingly hostile and she was subjected to multiple threats and other discriminatory/retaliatory adverse actions regarding her compensation, terms, conditions, location, and/or privileges of her employment with Defendants.

175.     Plaintiff's speech was on a matter of public concern.

176.     Defendants took materially adverse employment actions against Plaintiff for engaging in protected activity.

177.     Plaintiff's protected activity was a substantial or motivating factor in Defendants' decisions.

178.     Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff is pretextual and can readily be disbelieved.

179.     Defendants acted upon a continuing course of conduct.

180.     Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendants.

181.    As a result of Defendants' violations of Plaintiff's Free Speech rights, Plaintiff

has suffered damages, including, but not limited to: past and future lost wages, pain and

suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation,

emotional distress, reputational harm, diminishment of career opportunities, and other

harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against all Defendants and pray for the

following relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees;

(4) litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that

Defendants' conduct as set forth herein is in violation of the First Amendment; (7) punitive

damages; (8) front pay; and (9) all additional general and equitable relief to which Plaintiff is

entitled.

### COUNT X
### PHRA DISCRIMINATION
### 43 P.S. §§ 951-963
### Plaintiff v. All Defendants

182.    Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

183.    The PHRA § 955 provides that it shall be an unlawful discriminatory practice:

"(a) For any employer because of the race, color, religious creed, ancestry, age, sex,

national origin or non-job related handicap or disability or the use of a guide or support

animal because of the blindness, deafness or physical handicap of any individual or

independent contractor, to refuse to hire or employ or contract with, or to bar or to

discharge from employment such individual or independent contractor, or to otherwise

discriminate against such individual or independent contractor with respect to

compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

184.     Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex/gender and by subjecting Plaintiff to a hostile work environment.

185.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

**WHEREFORE**, Plaintiff demands judgment against all Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees; (4) litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of the law; (7) punitive damages; (8) and all additional general and equitable relief to which Plaintiff is entitled.

## COUNT XI
## PHRA RETALIATION
### 43 P.S. §§ 951-963
### Plaintiff v. All Defendants

186.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

187.     PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

188.    Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of her employer.

**WHEREFORE**, Plaintiff demands judgment against all Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees; (4) litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of the law; (7) punitive damages; (8) and all additional general and equitable relief to which Plaintiff is entitled.

<u>**COUNT XII**</u>
**PHRA AIDING AND ABETTING**
**43 P.S. §§ 951-963**
<u>**Plaintiff v. Defendants**</u>

189.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

190.    PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "for any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

191.    Defendants engaged in an unlawful discriminatory practice in violation of PHRA §955(e) by committing, aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**WHEREFORE**, Plaintiff demands judgment against all Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees;

(4) litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of the law; (7) punitive damages; (8) and all additional general and equitable relief to which Plaintiff is entitled.

## COUNT XIII
## PENNSYLVANIA WHISTLEBLOWER RETALIATION
### 43 P.S. § 1423
### Plaintiff v. Defendants

192.    Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

193.    The PWL provides, " No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act." 43 P.S. § 1423(a).n

194.    "Wrongdoing includes not only violations of statutes or regulations that are of the type that the employer is charged to enforce, but violations of any federal or state statute or regulation." Golaschevsky v. Dep't of Envtl. Protection, 554 Pa. 157, 162 (1998) citing 43 P.S. § 1422.

195.    In order to make out a retaliation case under the PWL, a Plaintiff must plead: (1) wrongdoing and (2) a causal connection between the report of wrongdoing and adverse employment action. McAndrew v. Bucks County Bd. Of Com'rs, 982 F. Supp. 2d 491, 503 (E.D. Pa. 2013).

196.     In analyzing whether the motive for an adverse employment action is retaliatory, courts in the Third Circuit have looked at two factors: "(1) the temporal proximity between the protected activity and the alleged discrimination and (2) the existence of a pattern of antagonism in the intervening period." Hussein v. UPMC Mercy Hosp., 466 Fed.Appx. 108, 112 (3d Cir.2012).

197.     Defendants are a "public body" for purposes of the PWL.

198.     The PWL makes it unlawful for a public employer to: discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer.

199.     While working for Defendants, Plaintiff reported (verbally and in writing) what she reasonably believed to be violations of various regulations under state and federal law, codes, and/or regulations.

200.     Defendants' management never properly investigated or resolved Plaintiff's concerns and instead retaliated against Plaintiff for raising said complaints.

201.     Following Plaintiff's complaints regarding what she reasonably believed to be violations of state law, codes and/or regulations, Plaintiff's work environment became increasingly hostile and she was subjected to multiple threats and other discriminatory/retaliatory adverse actions regarding her compensation, terms, conditions, location, and/or privileges of her employment with Defendants.

202.     The above-described actions taken against Plaintiff constitute violations of the PWL.

203.     As a result of Defendants' violations of the PWL, Plaintiffs have suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against all Defendants and pray for the following relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees; (4) litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of the PWL; (7) reinstatement; (8) front pay; and (9) all additional general and equitable relief to which Plaintiff is entitled.

<u>**COUNT XIV**</u>
**DECLARATORY RELIEF ALLEGATIONS**

204.     Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

205.     A present and actual controversy exists between Plaintiff and Defendants concerning their rights and respective duties.

206.     Plaintiff contends Defendants violated her rights as complained of herein.

207.     Plaintiff is informed and believe that Defendants deny these allegations.

208.     Declaratory relief is therefore necessary and appropriate.

**WHEREFORE**, Plaintiff seeks a judicial declaration of the rights and duties of the respective parties.

**COUNT XV**
**INJUNCTIVE RELIEF ALLEGATIONS**

209.      Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

210.      No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein.

211.      If this Court does not grant the injunctive relief sought, Plaintiff will be irreparably harmed.

**WHEREFORE**, Plaintiff seeks an order enjoining Defendants from engaging in the unlawful acts complained of herein.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues raised by this complaint.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

By: _____

IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiff, Lorraine Harmer*

Dated: 11/18/19