**Lorraine Harmer, CCIU Employee**
**Minutes from Loudermill Hearing**

**February 23, 2018**

**Attendees:**
Dr. Joseph O'Brien, Executive Director CCIU
Iain Strachan, Director, Human Resources
Maureen Linahan, Assistant Director, Human Resources
Chip Harper, Principal, Communications/BVA/PVA
Mary Curley, Director, Communications
Lorraine Harmer, BVA Online Math Instructor
Ron Harmer, Support Person for Lorrain Harmer
Shannon Moore, PSEA

**Purpose:**
Dr. O'Brien opened the meeting by explaining that this was a Loudermill hearing, which is part of the due process requirement that must be provided to a United States government employee prior to removing the employee or imposing severe discipline. The purpose of a Loudermill hearing is to provide an employee the opportunity to present their side of the story before the employer makes a decision on discipline.

**Charges (read by Dr. O'Brien):**

1. **Failure to report to work or report absences** beginning on January 25, 2018 continuing through present day for a total of thirteen work days through February 14, 2018.

2. **Not reporting to work since January 10, 2018.** Ms. Harmer reported to work and used sick time on January 11, 12, and 16, 2018. From January 16 through January 19, Ms. Harmer did not report to work at all, instead using a combination of sick days and calendar adjustment time.

    Note: Ms. Harmer requested a break at this point in time, which she was granted.

3. **Using sick personal time and calendar adjustment time after being denied some requested medical accommodation requests.** Ms. Harmer requested to work from home on January 17 and 18, 2018. When this request was denied, Ms. Harmer used sick days for this time off. In addition, a sick day was used on January 19, 2018.

4. **Verbally resigning from employment with Chester County Intermediate Unit on January 23, 2018.** On January 23, 2018, Ms. Harmer emailed her supervisor, Chip Harper, a request to send a goodbye message to her students. In addition, on the same day, Ms. Harmer emailed Mary Curley, Director of Communications and Learning

1

Solutions, a request to send a goodbye message to staff. Ms. Harmer also returned her CCIU-issued laptop on January 24, 2018.

5. **Ms. Harmer did not submit any FMLA documentation to support time off.** On January 19, 2018, Ms. Harmer was provided information on her eligibility for FMLA and documentation required from her physician. This paperwork was due back by February 3, 2018. On February 7, 2018, Ms. Harmer's representative indicated to Iain Strachan, Director of Human Resources, her desire to utilize FMLA; however, to date, no official request for FMLA leave nor any documentation has been received in Human Resources.

**Ms. Harmer's Response to Charges:**

Shannon Moore stated that she would be responding on Ms. Harmer's behalf.

1. **Ms. Moore:** Ms. Harmer is four-year employee at the IU who received good evaluations, cares deeply for her students, but was experiencing a health condition due to a disability. During this time, she requested to use sick leave and it was denied. Ms. Harmer is under a doctor's care and wishes to continue to work. See two doctors' notes. There was confusion on Ms. Harmer's part regarding FMLA due to communication sent to Ms. Harmer by Maureen Linahan. Ms. Harmer believed that she had to resign in order to avoid getting fired. A settlement agreement was negotiated. During that time, Ms. Harmer decided she did not want to resign. Instead she wanted to use FMLA. The FMLA paperwork was not completed in the timeframe required by the IU, but that was because Ms. Harmer was out sick. Ms. Harmer wants to continue to work, and this explanation addresses Ms. Harmer's failure to report. Also, while negotiating settlement agreements, absences are not normally reported.

2. **Ms. Moore:** Ms. Harmer was denied her request to work from home. This appears to have been a reasonable request given that other BVA employees were granted this request in the past. In that regard, it appears this response was retaliatory. Referenced documentation presented into evidence at the hearing. See list of Exhibits on page nine of the minutes, including:

   - Doctor's notes (CCIUEA1 and CCIUEA2)
   - ADA request (CCIUEA3)
   - FMLA paperwork (CCIU4 and CCIU5)
   - Ms. Harmer's emails (CCIUEA6)

3. **Ms. Moore:** Ms. Harmer was under a doctor's care. A request for accommodation was denied. Submitted that it was a reasonable use of sick time, given that Ms. Harmer was unable to work.

4. **Ms. Moore:** Ms. Harmer felt she had no other choice but to resign. She was getting emails from her students and she asked Mr. Harper if she could communicate with

2

them. In addition, Ms. Harmer was concerned about being in possession of the IU's property; i.e. she did not want to open herself up to tampering allegations, so she turned in her computer. She did this in consultation with Mark Cottom. Dr. O'Brien noted that Ms. Harmer took all of the normal steps to resign. She had seven days in settlement agreement to revoke. Dr. O'Brien also made the point that it was the I.U.'s choice to provide Ms. Harmer with a financial settlement, which is not mandatory.

5. **Ms. Moore:** Reiterated that Ms. Harmer was a good employee who was having real life difficulties. Ms. Harmer requested reasonable accommodations in the workplace, not all of which were granted. Ms. Moore said that she had a conversation with Mr. Strachan indicating that Ms. Harmer wished to go on FMLA versus resigning. Ms. Moore stated that she believes that Ms. Harmer should not be terminated, and that termination will appear retaliatory. Ms. Moore also stated that the Association is backing Ms. Harmer. Mark Cottom is not in attendance at the hearing because Ms. Harmer requested that he not be present. **Ms. Harmer:** Stated that she has General Anxiety Disorder. Mr. Cottom told her that should resign or she may be terminated. She could also potentially lose her teaching license. Ms. Harmer stated that she does not feel Mr. Cottom had her best interests at heart, and she referenced harassment and a hostile work environment, as well as being required to teach against her morals. Dr. O'Brien expressed serious concern over these allegations. He asked Ms. Harmer what steps she took to report these concerns. Ms. Harmer said she reported it to Ms. Linahan, who provided Ms. Harmer with the documentation required in order for Ms. Harmer to file a formal complaint within the CCIU. Ms. Harmer confirmed that she did not file a formal complaint regarding harassment or a hostile environment. But she does believe, in reading the harassment policy, that she may have been denied opportunities, which falls under harassment. Ms. Harmer also stated that she did file a complaint with the EEOC. She held off filing it with the CCIU until she could have time to write it up and have someone else review it.

Note: Ms. Harmer requested a break at this time, which she was granted.

Ms. Moore confirmed that her response to the charges was concluded.

Dr. O'Brien asked a follow up question regarding Ms. Harmer's reference to being required to teach against her morals. Ms. Harmer stated that she earned a 2.75 distinguished rating last year. That rating dropped to 2.0, proficient, once the student performance data was considered in the score. She explained that her concern about practices that conflict with her morals included non-enforcement of truancy and the promotion of students from one grade level to the next who are not sufficiently prepared. She summarized her concerns stating that she cannot teach due to circumstances beyond her control. She stated that she expressed these concerns to Lisa Miller and Mark Cottom, and she believes these to be fraudulent and illegal practices.

3

**Administrative Response:**

**Iain Strachan:** Stated that he has no record of anyone at the CCIU advising Ms. Harmer that she should resign or that she was going to be terminated. Based on the timeline of events and all of the evidence, he believes that Ms. Harmer submitted her resignation because she had received another job offer. Mr. Strachan first became aware of the fact that Ms. Harmer had resigned based on a phone call from Mr. Cottom on 1/23/18. When Mr. Cottom stated that Ms. Harmer was resigning, it came as a complete surprise to him; he also stated that Mr. Cottom expressed surprise as well.

Note:  Ms. Harmer requested a break at this time, which she was granted.

Mr. Strachan stated that Mr. Cottom had received a text from Ms. Harmer on 1/23/18 regarding her resignation.  Mr. Strachan stated to Mr. Cottom that it was Ms. Harmer's right to resign, but he suggested that a settlement agreement that included a few days pay and benefits for a couple of months could be made available to Ms. Harmer.  According to Mr. Strachan's testimony, he stated to Mr. Cottom that if Ms. Harmer is not interested in an agreement, to let him know and they would move forward with her resignation.  Mr. Cottom communicated that same night to Mr. Strachan that Ms. Harmer was interested in a settlement agreement. Following that conversation, in the next day or two, Ms. Harmer returned her CCIU computer and communicated with others in the IU that she had resigned because she had another job. During this timeframe, Mr. Strachan indicated that he had received an ADA form from Ms. Harmer, but because Ms. Harmer had resigned, he did not follow up on it.  Within the next day or two, Mr. Cottom called Mr. Strachan to see if unemployment compensation could be added to the settlement agreement. Mr. Strachan said no because Ms. Harmer had indicated that she had a new job.  Mr. Strachan indicated that he did not hear anything from Ms. Harmer until Ms. Moore reached out to him on 2/7/18, stating that Ms. Harmer had decided not to sign the settlement agreement.  Instead Ms. Harmer wanted to go out on FMLA.  Mr. Strachan stated that as of that time, Ms. Harmer had not submitted any FMLA documentation.  He also confirmed that the FMLA forms were provided to Ms. Harmer by Danielle Makolosko from the CCIU benefits department.  Mr. Strachan reported that this chain of events, including the fact that no FMLA documentation was submitted by Ms. Harmer, was the basis for the CCIU's determination that Ms. Harmer had abandoned her position.

Dr. O'Brien asked Mr. Strachan to confirm if Ms. Harmer requested special accommodations based on her disability. Mr. Strachan confirmed that there had been five requests for accommodations; some were granted and some were denied. Mr. Strachan gave the example of a work station request which was granted, whereby the I.U. had provided Ms. Harmer with a set up that would allow her to stand or sit at her workstation. Ms. Harmer stated her concerns in the hearing that what was provided was not actually ergonomic.  Mr. Strachan stated that he requested more specific information regarding the accommodations requested ~~requirements~~ but never received them. He stated that it was communicated to Ms. Harmer that if specific requirements were received from her doctor, they could further consider her requests.  This same response was given to Ms. Harmer regarding her request to work from home. By the time

4

Mr. Strachan received additional information on this request, he received notification of Ms. Harmer's resignation. Ms. Moore stated that requests to work from home were granted to other CCIU employees in the past. Mr. Strachan said any approved requests were accompanied by medical specifics supporting the request which included a reason why and the duration of the request, which was requested from Ms. Harmer multiple times. Mr. Strachan also added that the CCIU has denied requests to work from home in the past.

Aqua therapy classes at the YMCA were denied because it would take Ms. Harmer away from a crucial part of her job (before 4:00) several days a week.

Requests were granted to go to Doctor's appointments.

Regarding work stress, no specifics were provided to the CCIU by a doctor on what actions would result in less stress for Ms. Harmer. Any specific information in this regard would have enabled the CCIU to either grant, deny or offer an alternative, according to Mr. Strachan.

Regarding harassment, Mr. Strachan stated that he asked Ms. Harmer for specifics on harassment allegations in case he needed to take immediate action. According to Mr. Strachan, Ms. Harmer referenced a meeting with Mr. Harper, where there was a request by Ms. Harmer to Mr. Harper regarding attendance at a Project Concern event, which was denied based on conflicts with Ms. Harmer's work schedule. Mr. Strachan stated in the hearing that he did not hear anything from Ms. Harmer in that initial discussion that moved him to take immediate action; but he did ask Ms. Harmer to put her concerns in writing so it could be investigated. A formal complaint has not been received to date.

There were further discussions in the hearing regarding communications between Ms. Harmer, Ms. Linahan, Ms. Curley, and Mr. Harper. A meeting between Ms. Harmer and Mr. Harper regarding the Project Concern request appeared to be the origin of Ms. Harmer's concerns regarding harassment, where she stated that the tone got heated. Ms. Harmer followed up with Ms. Curley, who notified Human Resources when PTSD was raised as a concern. Subsequent meetings were held between Ms. Curley, Ms. Harmer, Ms. Linahan and David Tschachler to discuss Ms. Harmer's schedule change request for Project Concern, which was denied. It was discussed in the hearing that this was the fourth schedule change request in a week from Ms. Harmer, some of which were granted.

Meetings were also held to discuss strategies for Ms. Harmer to help her deal with her PTSD and her resulting issues dealing with male authority figures (as per Ms. Harmer in the hearing). The PTSD resulted in her being uncomfortable in her dealings with Mr. Harper, so he was not included in these meetings. Ms. Linahan stated that she asked Ms. Harmer what CCIU could do to make her more comfortable at work. She also provided Ms. Harmer with the CCIU's policy on harassment. They talked about the ADA and Ms. Linahan gave Ms. Harmer related paperwork. In subsequent meetings, Ms. Linahan said that they came up with strategies to help Ms. Harmer better deal with meetings where her supervisor was present. Discussion topics included taking breaks as needed, having someone present with Ms. Harmer for support (e.g.

5

Mr. Tschachler). Ms. Harmer also requested audio recordings of meetings. The first two topics were discussed and the parties were in agreement. Ms. Linahan asked for more information on recording the meetings. Ms. Harmer also communicated to Ms. Linahan that she was aware of others who have had issues dealing with Mr. Harper. Ms. Linahan stated that HR had not received any concerns that she was aware of, but stated that if any other staff members had concerns that they should reach out directly to HR with more information. Ms. Linahan documented the meeting regarding strategies for dealing with PTSD-related issues.

Ms. Linahan also noted that Ms. Harmer stated that her interaction with her supervisor was elevated due to PTSD, and was not harassment. Her issues with dealing with male authority figures were contributing to her feeling harassed.

Ms. Linahan reviewed Exhibit AE3, Lorraine Harmer Timeline of Events.

Mr. Strachan stated that he set up a meeting with Ms. Harmer on 1/10/18. Attendees included Ms. Harmer, Mr. Strachan, Danielle Schoeninger, and Mr. Tschachler. Exhibit AE2 details communication between Mr. Strachan and Ms. Harman after the original 1/10/18 meeting. This includes Ms. Harmer using sick days to cover her absences; clarification that sick days are to be used when an employee is too sick to come to work or for doctor's appointments; clarification that complaints should be written on an employee's own time; Mr. Strachan's request for additional information from Ms. Harmer's doctors so the accommodations requests can be properly evaluated; Mr. Strachan's request for documents from her treating physician regarding her inability to come to work; Mr. Strachan's response to Ms. Harmer's request for accommodations, including working from home, with corresponding reasons as to why the request was approved or denied.

Dr. O'Brien asked clarifying questions, such as:
- Did CCIU receive any medical evidence of PTSD? Answer: No
- Did CCIU make accommodations for PTSD? Answer: Yes
- Did CCIU grant special accommodations for other conditions, such as Fibromyalgia? Answer: Some granted; some denied.
- Did CCIU receive a formal, written complaint regarding harassment allegations? Answer: No
- Did CCIU receive information from Ms. Harmer regarding General Anxiety Disorder? Yes, in an email from 1/22/18. It was not formally addressed by the CCIU because by that date, Ms. Harmer had stated that she was resigning.

There was a discussion on the job offer received by Ms. Harmer outside of the CCIU. She explained that the offer from DXC Technology as an Administrative Assistant turned out to be a scam and was not a legitimate offer. Dr. O'Brien read the resignation letter from Ms. Harmer out loud, which stated that she took a new job that allows her to work from anywhere. He stated that it was unfortunate that the offer turned out to be false; however, when she wrote her letter of resignation, she did intend to leave the CCIU.

6

Danielle Mikolosko from Human Resources was called to the hearing to review the timeline regarding information she provided to Ms. Harmer on FMLA. See Exhibit AE6.

Additional information was provided by both Ms. Linahan and Ms. Harmer regarding a phone call they had on 1/8/18: After her conversation on the phone with Ms. Harmer, when Ms. Harmer was very upset and crying, Ms. Harmer stated that she didn't feel comfortable with the conversation. Ms. Harmer stated that Ms. Linahan said she appeared to be "emotionally fragile". Ms. Harmer was concerned that her PTSD was being used against her. Ms. Harmer never met with Ms. Linahan again. Mr. Strachan took over all communication with Ms. Harmer moving forward.

At this point in the hearing, Ms. Moore followed up with Ms. Harmer regarding her interactions with Mr. Harper, her supervisor. Why was it stressful? Ms. Harmer said she stopped by his office for to discuss her request to attend a Project Concern event. Mr. Harper said he didn't understand the request, and during the exchange, he commented that Ms. Harmer had a tone. Ms. Harmer said she did not feel comfortable meeting alone with Mr. Harper. They had a confrontation four years ago and it had escalated. She felt her supervisor was being aggressive. Ms. Harmer also divulged details of the origin of her PTSD in the hearing. Ms. Harmer gave background on her teaching experience and how she tried to pursue employment that would be a better fit. She also had struggles with her previous employer. She stated that Mr. Harper was her first male supervisor in 13 years. She stated that Mr. Harper was very compassionate and understanding during certain meetings. He adapted his approach over the years as he came to understand her disability. But he denied her request regarding Project Concern. Ms. Harmer said that she told Mr. Harper that she was originally scheduled to be in Philly on that day, but that was cancelled, so she wanted to go to Project Concern to connect with her students. She reminded Mr. Harper of these things. Mr. Harper said that she could not dictate her own schedule. According to Ms. Harmer, at that point, Mr. Harper was standing. She said she did not ask to take a break, but she stated in the meeting that she was not comfortable with the two of them meeting alone. She said she wanted to escalate the issue and according to Ms. Harmer, Mr. Harper asked, "Who gives you the authority to take it up?" Ms. Harmer stated Ms. Curley previously indicated concerns could be brought to her attention as the Division Director.

### Closing Statements:

Ms. Moore stated that Ms. Harmer was pursuing a resignation, but rescinded that request and asked to pursue FMLA. Ms. Moore also reiterated that Ms. Harmer asked for reasonable accommodations. Ms. Harmer is a good teacher, cares about students; this was not job abandonment. She asked that this not move forward to the Board, and she asked that the CCIU consider the FMLA request. She asked that Ms. Harmer be placed on FMLA with job protections provided therein. Ms. Moore stated that it is Ms. Harmer's intent to return to work at the CCIU.

Ms. Harmer expressed concern that this was taking so long to resolve. She stopped working on 1/10/18 and it is still not resolved, resulting in her not having income for an extended period of

time. She wants to go out on FMLA and come back. She needs a decision so she can move on. Dr. O'Brien clarified that FMLA is not paid leave. Ms. Harmer stated that she has been told by the EEOC that if the CCIU cannot provide accommodations, that it may be a qualifying event resulting in her getting paid leave through unemployment compensation.

Dr. O'Brien said that the CCIU takes allegations of harassment very seriously. He encouraged Ms. Harmer to put the detail in writing. Ms. Harmer raised a new issue at this point regarding her assertion that she may have also been denied employment opportunities, referencing a COSN conference in Washington DC, where Mr. Harper took another teacher. Mr. Harper stated that he has given Ms. Harmer numerous opportunities, including the next COSN conference in Washington, for which Ms. Harmer was scheduled. Ms. Harmer also noted that she feels she was more qualified for the department chair position than Lisa Miller, the chosen candidate. She stated that Ms. Miller seeks Ms. Harmer's guidance on a lot of things. Ms. Harmer also noted that Ms. Miller is not willing to present at conferences.

Mr. Strachan summarized his understanding of Ms. Harmer's situation as follows: Ms. Harmer was not happy in her position because of the Philadelphia test scores, which caused her overall evaluation scores to go down. She was also denied working from home. As a result, she got a new position and resigned from the CCIU. Ms. Harmer changed her mind about resigning. Dr. O'Brien asked Mr. Strachan to summarize the terms of the settlement agreement that Ms. Harmer was offered.

Dr. O'Brien stated that he had concerns about Ms. Harmer accusing someone of harassment without documenting the complaint. Ms. Harmer raised a concern that she received an email from Sana Graham in Human Resources confirming her employment for STEM Saturdays, and Ms. Harmer was concerned that the email distribution list included all staff members. Ms. Harmer questioned whether this was the norm. Mr. Strachan stated that this was standard practice on all offers of employment.

Note: Ms. Harmer requested a break at this time, which she was granted.

Upon return from the break, Ms. Moore communicated to Ms. Harmer that Dr. O'Brien would like to work out some sort of settlement agreement, if possible.

**Exhibits:**

The following exhibits were submitted and numbered during the course of the hearing. See separate file containing scanned documents.

    Administrative (ADT) Exhibits:
    ADT 1 –  Request for Leave of Absence With and/or Without Pay, Family or Medical Leave (blank form)
    ADT 2 – Email Correspondence between Lorraine Harmer and Iain Strachan (1/15/18 to 1/18/18)

8

ADT 3 – Lorrain Harmer Timeline of Events associated with Maureen Linahan, Mary Curley, Dave Tschachler, Chip Harper (12/17/17 to 1/8/18)
ADT 4– Memo from Maureen Linahan to Lorraine Harmer regarding Accommodations (1/4/18)
ADT 5 – Lorraine Harmer Timeline of Absences and Related Correspondence (1/10/18 to 2/7/18)
ADT 6 – Timeline regarding FMLA/STD/LTD communications between Danielle Mikolosko (HR Benefits Analyst), Lorraine Harmer and Mark Cottom (1/19/18 to 1/22/18)
ADT 7 – Email from Lorraine Harmer to Noreen O'Neill and Niki Harvey resigning CCIU position and thanking Ms. O'Neill and Ms. Harvey for their support (2/23/18)
ADT 8 – Emails between Danielle Mikolosko, Lorraine Harmer, and Mark Cottom regarding FMLA paperwork and accommodations (1/19/18 to 1/22/18)

CCIU Educational Association (CCIUEA) Exhibits
CCIUEA 1 – Doctor's note stating Lorraine Harmer is ill and cannot work at BVA (1/23/18)
CCIUEA 2 – Doctor's note stating Lorraine Harmer was seen on 1/22/18 and should be excused from work for 1/18/18, 1/19/18, and 1/22/18. (1/22/18)
CCIUEA 3 – CCIU ADA Request Form filled out by Lorraine Harmer's doctor requesting stress-free work environment, such as working in alternate location or from home for two months.  (1/22/18)
CCIUEA 4 – Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act); form filled out by Lorraine Harmer's doctor (2/5/18)
CCIUEA 5 - Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act); form filled out by Lorraine Harmer's doctor (2/8/18)
CCIUEA 6 – Email from Lorraine Harmer to Dr. Joe O'Brien, Iain Strachan, Mary Curley, Chip Harper, Shannon Moore laying out her position in advance of the hearing on 2/23/18.